■   STATE BANK OF ALBANY, Appellant, v. ARBIT FURNITURE Co., INC., Respondent. (Action No. 1.) STATE BANK OF ALBANY, Appellant, v. ARBIT FURNITURE Co., INC., Respondent. (Action No. 2.)— Appeal from a judgment

of the Supreme Court, entered April 17, 1972 in Albany County, upon a verdict rendered at a Trial Term, in favor of the defendant. The State Bank of Albany brought these two actions to recover on two retail installment contracts which had been sold and assigned to it by the defendant, Arbit Furniture Company, who had signed an unconditional guarantee of payment when it assigned the contracts to the bank. Since 1959, the bank and Arbit had had an oral agreement whereby Arbit would sell its retail installment contracts to the bank in return for the payment of the unpaid balance. The bank collected payments directly from the buyer and the purchased goods served as collateral for the installment contract. On the contracts which are the subjects of these actions, the buyer is in default and the collateral cannot be located. After the buyer defaulted and the bank could not locate either the buyer or the collateral, the bank demanded that Arbit pay the balance due pursuant to the terms of the written agreement. Arbit refused to pay. The defendant does not deny that it signed the guarantee, but argues that the bank modified the basic guarantee agreement between them. Arbit contends that prior to 1966, its surety agreement with the bank was that Arbit would guarantee payment and the bank would file a financing statement so as to protect the collateral. The security interest in the collateral was a purchase money security interest (Uniform Commercial Code, § 9–107) and, as such, was perfected, without filing, against everyone except a consumer who purchased without knowledge of the security interest. Filing of a financial statement is necessary to cut off the right of such a consumer (Uniform Commercial Code, § 9–307, subd. [2]). According to the defendant, in early 1966 the bank unilaterally modified this surety contract by providing that the bank would now obtain insurance against wrongful disposition of the collateral in lieu of filing and orally communicated this modification to the defendant by bank agents. It is the defendant's contention that this insurance in lieu of filing was to be so-called "skip insurance" which gives broader protection than does filing or nonfiling insurance, as the latter two devices afford no protection against the buyer's disappearing with the collateral. They only protect the security interest when the goods are found in the hands of an innocent consumer, while "skip insurance" protects against wrongful disposition and removal of the goods. The bank admits that it was paid a two-dollar document fee. However, it further submits that this fee was either to pay for filing or to purchase nonfiling insurance, that is, insurance that would provide the same coverage as would filing. In fact, such insurance was in effect at the time these contracts were entered into. Since the bank's burden under the guarantee agreement, as Arbit alleges it was modified, would be greater than prior to said modification, it is necessary for the oral modification to be supported by some new or additional consideration (*Matter of Crea*, 27 N Y 2d 339; General Obligations Law, § 5–1103; 17 Am. Jur. 2d, Contracts, § 469). Such consideration was not forthcoming, as neither the buyer nor the seller has done anything more. Thus, the alleged modification is unenforceable since it was not supported by consideration. Judgment reversed, on the law and the facts, with costs, and judgment directed to be entered in favor of the plaintiff in the amount of $1,265.98, together with appropriate interest. Greenblott, J. P., Cooke, Kane and Main, JJ., concur.