FRANCES R. KLEIN, Individually and as Executrix of the Estate of JACK KLEIN, Deceased, Appellant, v JAMOR PURVEYORS, INC., et al., Respondents.

Second Department, May 20, 1985

APPEARANCES OF COUNSEL

*Birbrower, Montalbano, Condon & Frank, P. C.* (*Denyse Coyle* and *Susan Corcoran* of counsel), for appellant.

*Robert J. Hecker, P. C.* (*Bruce Roth* of counsel), for respondents.

### OPINION OF THE COURT

MOLLEN, P. J.

The primary question presented on these appeals is whether the Statute of Frauds bars enforcement of an oral modification of a written corporate shareholders' agreement, which oral modification was allegedly agreed upon by the sole shareholders and the corporation. Special Term concluded that the alleged oral modification was unenforceable and dismissed those causes of action which were predicated on the modification. There should be an affirmance.

On or about August 10, 1979, Jack Klein, plaintiff's decedent, defendant Michael Jacobson, and defendant Jamor Purveyors, Inc. (Jamor), entered into an agreement which recognized Klein and Jacobson as the sole and equal shareholders in Jamor. The agreement, *inter alia,* provided that within 30 days of the appointment of a personal representative by reason of the death of a shareholder, "the estate of such decedent shall sell, and the CORPORATION [Jamor] shall purchase all of the outstanding shares of stock of such CORPORATION issued to and held in the name of the decedent on the books of the CORPORATION"; that the purchase price of each share of stock "shall be the number of shares outstanding divided into $110,000", which purchase price could be changed by written agreement; and that the buy out of a decedent's shares was to be substantially funded by the proceeds of a $50,000 life insurance policy, which named Jamor as the beneficiary and was paid for by Jamor.

On March 22, 1982, Klein and Jacobson submitted applications for additional life insurance, each policy having a face value of $100,000, and each listing Jamor as the beneficiary. Jacobson's application was approved; however, Klein's application was denied some eight days after he died on June 9, 1982.

In accordance with the August 1979 agreement, Jamor offered to redeem Klein's shares from his estate for $55,000 upon receipt of the proceeds from Klein's life insurance policy. Plaintiff, the executrix of Klein's estate, rejected the offer and instituted this

action alleging, *inter alia,* that in or about March 1982, Klein entered into an oral agreement with Jamor and Jacobson "in which they agreed * * * that upon the death of either Jack Klein or Michael Jacobson, the Corporation [Jamor] and living shareholder would pay to the estate of the deceased shareholder, the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, in addition to any sum or sums paid to the estate pursuant to the written agreement made on August 10, 1979", thereby increasing the buy-out price to $155,000; that the alleged oral agreement further provided that both Klein and Jacobson were to apply for additional life insurance in the amount of $100,000, "but that the agreement was not dependent upon it being funded by said life insurance, but would be funded by corporate assets if such life insurance could not, for any reason, be obtained"; and that, pursuant to the terms of the oral agreement, both Klein and Jacobson submitted applications for additional life insurance. Jacobson has denied that he orally agreed with Jack Klein "to increase the buy-out provisions above the $55,000.00 set forth in the Shareholders [*sic*] Agreement".

Defendants Jamor and Jacobson moved to dismiss (1) the second cause of action, seeking the recovery of $100,000 damages based upon the alleged oral modification of the shareholders' agreement to increase the buy-out price of the decedent's outstanding shares by that amount, (2) the third cause of action seeking the recovery of $155,000, which represents the total of the original buy-out price set forth in the shareholders' agreement and the increased buy-out price as allegedly agreed upon by the parties, and (3) the fourth cause of action seeking an accounting and the recovery of 50% of Jamor's net profits earned since the date of Klein's death. As to the second and third causes, defendants argued that dismissal was warranted because the alleged oral agreement modifying the August 1979 shareholders' agreement violated the Statute of Frauds (*see,* CPLR 3211 [a] [5]). The defendants also argued that the second and third causes should be dismissed because they failed to state a cause of action (*see,* CPLR 3211 [a] [7]) in that the shareholders' agreement provided that it could only "be changed by a written agreement signed by all of the STOCKHOLDERS". With regard to the fourth cause, the defendants contended that it too should be dismissed because it failed to state a cause of action (*see,* CPLR 3211 [a] [7]).

In response, the plaintiff argued, *inter alia,* that "[t]here is [*sic*] sufficient memoranda and partial performance to satisfy the statute of frauds." Specifically, the plaintiff's position was that Jacobson's signed application for $100,000 in life insurance,

coupled with "a type-written memorandum *believed* to have been prepared by Henry P. Milano, the broker who filled out and processed the applications for the $100,000.00 policies" (emphasis added), was sufficient to satisfy the Statute of Frauds. The "type-written memorandum", which was not signed, listed the partners apparently by their first names (Jack, Mike) and their ages, and indicated the respective premiums to be paid. The memorandum was headed, "$100,000 TERM BUY/SELL FOR JAMOR INC." The plaintiff further argued that Jacobson's "partial performance in applying for and acquiring the policy and accepting the benefit of knowing that his estate would be fully paid for his stock upon his death", were acts sufficient to remove the oral contract from the Statute of Frauds.

By order and judgment dated December 13, 1983, Special Term granted defendants' motion to dismiss, concluding that the second and third causes of action were barred by the Statute of Frauds, and that the fourth cause failed to state a cause of action. Thereafter, plaintiff moved for an order granting reargument of defendants' motion and, upon reargument, reinstating the dismissed causes of action. Special Term in effect granted the motion to reargue but adhered to its original determination.

General Obligations Law § 5-701 provides in pertinent part that:

"a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime".

The statute, therefore, makes unenforceable any oral agreement which, in the absence of some written memorandum, may not be fully performed before the end of a lifetime (*Dreher v Levy*, 67 AD2d 438, 440-441).

The Statute of Frauds may be satisfied by a writing which must contain " 'substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is' " (*Kobre v Instrument Sys. Corp.*, 54 AD2d 625, 626, *affd* 43 NY2d 862, quoting *Mentz v Newwitter*, 122 NY 491, 497). The statute does not require the writing "to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion"

(*Marks v Cowdin,* 226 NY 138, 145; *Crabtree v Elizabeth Arden Sales Corp.,* 305 NY 48, 54).

■ By its terms, the alleged oral agreement could be fully performed only after a shareholder's death. The oral agreement, assuming that one existed, was intended to increase the buy-out price of the shares in Jamor owned by the deceased shareholder. It was only after the death of one of the shareholders that the value of the stock would be increased by $100,000 and paid to the decedent's estate in return for the decedent's shares in Jamor. Plainly, the agreement was made in anticipation of death and falls within the sweep of the Statute of Frauds (*see, Dreher v Levy, supra,* at p 441).

The documents relied upon by plaintiff, viz., the insurance applications, and unsigned "type-written memorandum", fall short of what the law requires to satisfy the statute. Briefly stated, the documents fail to set forth the essential terms of the oral agreement alleged by plaintiff (*see, Crabtree v Elizabeth Arden Sales Corp., supra,* at pp 55-56; *Kobre v Instrument Sys. Corp., supra,* at p 626; *see also, Elmsford Sheet Metal Workers v Shasta Indus.,* 103 AD2d 764).

Nor does the doctrine of part performance salvage the alleged oral agreement.* In *Anostario v Vicinanzo* (59 NY2d 662, 664), the Court of Appeals explained that: "The doctrine of part performance may be invoked only if * * * [the conduct relied upon] can be characterized as 'unequivocally referrable' to the agreement alleged. It is not sufficient * * * that the oral agreement gives significance to * * * [that conduct]. Rather, the actions alone must be 'unintelligible or at least extraordinary', explainable only with reference to the oral agreement" (*accord, American Bartenders School v 105 Madison Co.,* 59 NY2d 716, 718).

There is nothing about the conduct relied upon which makes it "unequivocally referrable" to the alleged oral agreement, explainable only with reference to the agreement. While the agreement does provide a possible motivation for the conduct in question, other explanations are equally plausible including the explanation that the conduct constituted "preparatory steps taken with a view toward consummation of an agreement in the

___

* As previously noted, plaintiff argued before Special Term that defendants' partial performance of the oral agreement removed it from the Statute of Frauds. Plaintiff has apparently changed position and now argues that what was labeled partial performance was full performance. Aside from the fact that the issue as presently framed was not preserved for appellate review (*see, Orellano v Samples Tire Equip. & Supply Corp.,* 110 AD2d 757 [2d Dept, Apr. 15, 1985]), we disagree with plaintiff that the oral agreement was fully performed.

future" (*Anostario v Vicinanzo, supra,* at p 664). This simply is not one of those "exceptional situations" (*Marcraft Recreation Corp. v Francis Devlin Co.,* 506 F Supp 1081, 1085) in which the doctrine of part performance removes the action from the defense of the Statute of Frauds (*see, Cooper v Schube,* 86 AD2d 62, *affd* 57 NY2d 1016).

Equally unavailing is plaintiff's reliance on equitable estoppel. In *D & N Boening v Kirsch Beverages* (99 AD2d 522, 523), we stated that: "That doctrine, as set forth in section 139 of the Restatement of Contracts second, provides that a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee, and which does induce such action or forebearance, is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise * * * Even if New York law fully embraced the doctrine of promissory estoppel, that doctrine would only be applied to the limited class of cases where the promisee, in reliance upon a promise, has suffered unconscionable injury". We conclude that the circumstances at bar do not present a case "where the promisee, in reliance upon a promise, has suffered unconscionable injury" (*D & N Boening v Kirsch Beverages, supra,* at p 523).

In addition to the foregoing, we note that the shareholders' agreement provided that the buy-out price of a deceased shareholder's shares in Jamor "can be changed by a written agreement signed by all of the STOCKHOLDERS". The plaintiff contends that this language was intended to provide a method of modifying the written agreement; it was not intended to foreclose the shareholders from orally agreeing to increase the buy-out price set forth in the shareholders' agreement. We find this construction of the agreement to be untenable. Had the shareholders and Jamor intended not to limit the methods by which that portion of the written agreement pertaining to the buy-out price could be modified, the language quoted above would have been unnecessary.

General Obligations Law § 15-301 provides in relevant part that: "1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

◼ Suffice it to say that the arguments relied upon by the plaintiff to take the case at bar out of General Obligations Law

§ 5-701 are, for the reasons previously discussed, also unpersuasive when made in connection with General Obligations Law § 15-301.

■ There is no merit to plaintiff's contention that before ordering dismissal, Special Term should have permitted discovery to go forward pursuant to CPLR 3211 (d) to enable plaintiff to discover additional facts to oppose the defendants' motion to dismiss. We agree with Special Term that plaintiff's arguments concerning the existence of additional evidence establishing the oral agreement were speculative and consequently insufficient on a motion to dismiss (*see, Yorktown Sq. Assoc. v Union Dime Sav. Bank,* 79 AD2d 1040).

We have reviewed the plaintiff's remaining contentions and find them to be without merit.

Accordingly, appeal from order and judgment (one paper) entered December 13, 1983, should be dismissed. Said order and judgment appealed from was superseded by the order dated February 8, 1984, made upon reargument. The order dated February 8, 1984, should be affirmed insofar as appealed from. Respondents should be awarded one bill of costs.

TITONE, LAZER and RUBIN, JJ., concur.

Appeal from the order and judgment entered December 13, 1983, dismissed. The portions of that order and judgment appealed from by plaintiff were superseded by the order dated February 8, 1984, made upon reargument.

Order dated February 8, 1984, affirmed insofar as appealed from.

Respondents are awarded one bill of costs.